And we will now move on to the final argument set on today's calendar. And that is Mier v. CVS Pharmacy, case number 24-482. Mier v. CVS Pharmacy, Inc. You're fine. Good morning, may it please the Court. Chagokol, on behalf of the appellant plaintiff, Joseph Mier, I'm going to try to reserve three minutes of my time for rebuttal. The question here, what does the label mean? Would a reasonable consumer understand the label to mean? We plausibly allege that the reasonable consumer would think that the label means that it would kill 99.99% of many common germs, germs commonly found on their hands. Ultimately, though, is that question, is that a legal question or a factual question? The label understanding, Your Honor, at the 12B6 stage, which is where we are at this point, is whether that interpretation is reasonable. But ultimately, that's going to be a factual question. Well, that's what I'm wondering, though, because, I mean, what a reasonable consumer would think, I don't, let me pinpoint it. I mean, I'm a little worried about the survey data and what we do with it. Because on the one hand, you could look at it and say, well, you have survey data here in the complaint that says, you know, there could be some confusion out there. But is that ultimately how we look at it or is it a legal question? I'll give you an example. In the First Amendment Establishment Clause context, well, pre-Bremerton, where we used to apply the lemon test and you used to look at what a reasonable observer would think, would they think that it was, was there a religious entanglement or not? We didn't go and poll everyone and say, you know, what do you think? Do you think that this is religious or not? It ultimately was a legal standard. And so I guess what I'm wondering is to what degree can you plead around this or are we left with, as judges, kind of looking at this and saying, I'm going to imply some reasonable consumer standard and does this satisfy that? Well, Your Honor, I think it boils down to what is a plausible allegation, right? And a plausible allegation in light of this type of case would be what a reasonable consumer potentially would think. And you're right that not every survey is going to be, you know, giving you the answers to those questions. For example, Your Honor heard the Dr. Pepper case, right? And in that case, the conclusion of the survey was- Whether you would lose weight by drinking Dr. Pepper? Exactly. Regardless of whether you drink 20 cans of Dr. Pepper, regardless of whether you exercise, regardless of whether you wait, you know, for five people. So the conclusion in that case was completely logical. This case is a lot simpler than that. We're just asking people to tell us what the label means, something that they do almost every single day. One thing that gives me pause is, I mean, this survey was designed for the express purpose of this litigation. I mean, is that really a fact under a 12B6 motion? Because otherwise, it seems like you can always evade a motion dismissed by commissioning a survey and say, look, there's a split. The results are ambiguous or it supports our view. Therefore, it's a factual question. Well, Your Honor, I'm not saying for you to ignore your common sense. That's not my take. But in this case, we asked 534 people, people who buy this product, and we showed them the front and the back, not just the front. Yeah, I have problems with how the survey was done, but that's the thing. Then do we engage in that kind of analysis at a 12B6? I mean, do we do like mini Daubert analysis at the pleading stage? Seems like we shouldn't even consider them at this stage. Correct, Your Honor. It's the 12B6 stage, meaning they can come out and have their own experts come out and say, hey, the survey is no good. At the 12B6 stage? No, no, no, past the 12B6 stage. We are at the 12B6 stage. That shouldn't happen. That I think is the problem that Judge Lee is attuning us to is it seems like it puts a thumb on the scale for all plaintiffs to just come in with it. I mean, you could ask three people and get three different answers and say, well, look, it's a – there's confusion. That can't be what the law is. Well, Your Honor, the law doesn't really require a survey, right? And I give you that. That's why I'm wondering how much credence do we put into it because, I mean, maybe the question is do you win up or down without the survey? We can certainly talk about that, and I believe we have grounds to win without the survey. But just addressing the survey point briefly, it's not just say let me commission a survey and therefore I win. Look at McGinty, for example, 50-50 on both sides, and therefore the plaintiff lost because it wasn't clear which way consumers were leaning and which ways they were not. Very different than 85 percent of people believing that this is the takeaway from the label. So I'm not sure that that's the right interpretation of McGinty, actually, because McGinty says we give you – we take these allegations as true, but they're not helpful. It's not clear what McGinty was saying. McGinty could have been saying they're not helpful because the results of the survey are inconclusive, or McGinty could have been saying it doesn't really matter. You can have all the survey data, but we're going to look at this in our – whatever. The objective observer, as we think the objective observer, as we're sitting in our desk pondering this case, it's a very difficult position, I feel like, to put the judges in on this because there's no easy way to get out of this. I mean, we're constantly – I agree with you. You could ask 10 different people what you think you're getting when you buy this product, and I think you're going to get 10 different answers. That's a possibility, Your Honor. But looking back at McGinty, I'm not saying that that's the holding of the case. They took the survey – You're saying that the survey data was – it's different in this case than that case. Well, they looked at the survey data, and it kind of went against the plaintiff. So it's not just a matter of let me do a survey and therefore I win. It's let's see the results of the survey. We're not limited in guessing what a reasonable consumer is going to think. We know – at least we have some data points of what a reasonable consumer is saying, and that's certainly plausible. Six out of seven people are saying, yeah, I read the back and I read the front, and I think this is going to kill 99.99. Well, your survey looked at both the front and the back. For purposes of our review, you're saying, though, that you win even if you don't look to the back. That all we have to do, I think your argument is, all we have to do is look at the front that says kills 99.9 percent of germs, end of story, your case goes forward. That is certainly an unambiguous statement under Whiteside, and I can address that if you like. But even if you look at the back, that doesn't save them, and I can go over those three arguments. Part of that is – the first problem with the back statement is it's ambiguous. The second problem is that it potentially contradicts the front, and third, it's making a new promise. Just drawing attention to ambiguous, some of the interpretations of many are misleading. The Bell Court has told us that where an advertisement is susceptible to two plausible meanings, one false, one true, the advertiser is liable for the misleading variation. The Ninth Circuit in Whiteside held that the back label would need to make it impossible, impossible, for a reasonable consumer to be misled. So looking at the back statement, effectively eliminating more than 99.99 percent of many common harmful germs and bacteria in as little as 15 seconds is many eight germs? Is it 800? Does it include the many common germs that we allegedly complained are not killed? I guess the – yeah. I agree with you that the term many is very ambiguous. Some people may think that means 80 percent of the most common germs in your hand. It may mean just like five germs, which may end up being like 10 percent, which then in that case might be misleading. But I guess did you have to plead a bit more about those facts and say – I know you might not have as much information, but saying, look, many actually here in this case means only 10 percent, and therefore it's misleading. I don't think that's there in this complaint. Well, Your Honor, the problem that I have with that is that we're trying to find an interpretation that is true instead of just looking whether it's possible that there's interpretation that's misleading. And the inquiry isn't at the stage whether I can muster interpretation that is true. It's whether I can muster interpretation that potentially is misleading. And in that sense, many could be misleading because many could include exactly the germs that I mentioned in paragraphs 35 through 50 of the complaint, for example. And that way many wouldn't save them. If anything, it would be misleading, and therefore someone would still be misled. The second problem, which Your Honor just highlighted somewhat, is that it potentially contradicts many – there are several interpretations of many, some of which potentially contradicts them. For example, suppose, Your Honor, Judge Lee, you stated that you would write 100 percent of the panel's opinions. And then later you said, I'll write 100 percent of many of the panel's opinions. That second statement isn't clarifying the first. It's making a new promise. It's contradicting it. No one's going to read it or listen to it and say, oh, okay, he didn't mean all of the panel's opinions. Right? There's a narrowing to be done. But what about the asterisks? I mean, Whiteside does seem to give some significance to the asterisks and sort of says, look, when you see an asterisk, you can't assume that the statement is taken at face value. There's some qualification to that statement. Now, your argument seems to be, yeah, this was too much of a qualification of that statement. So Whiteside says that an asterisk gives you notice that there might be additional information about the statement. Right? It doesn't necessarily mean that every single consumer, when they go to the grocery store, they're going to pick out the label and say, oh, let me turn it before I buy it. Right? So putting that aside, I think that's a factual question. But even if you look at the back label, even if you know that there's additional information, that statement has, at this stage, you would have to have a specific purpose, which is to clarify the front statement. And the front statement says it will kill 99.99% of germs. If you're going to try to clarify that, you can't go and give a less precise or more ambiguous statement in the back. Why not? Well, because the back statement. Let's just pretend that the back statement was on the front. You'd still be arguing that it was deceptive. Well, if the back statement was in the front, then you'd definitely have an ambiguous statement. Right? Because at that point, the inquiry for an ambiguous statement would be whether a reasonable person would necessarily require additional information in order to know if there is a specific promise being made. So you have many comments, and your question would be, which many? Right? And you would turn to the back to clarify the potential ambiguity and potentially to try to dissolve any misleading possibility that that statement would have. So the only way they can – the only way this is not misleading is if they give the – they've got to have another asterisk next to many, and then they've got to have a third box that says, well, many means – Well, that would be potentially one way, right? Well, you could just say it kills many germs instead of 99.99% of germs. But I thought you said that if you had the back label on the front, that it would still be misleading, because just saying it kills 99% of many germs, in your view, is misleading. Well, it's a little – the analysis is slightly different, because if you're looking at the back label in relation to the front label, then the back label needs to do the following. It needs to make the misleading statement, the front label, impossible to be misled, right? So a recent person would be impossibly misled by that statement after they read the clarification. And so imagine a product, let's say, that says organic to some extent, and the back label says 70% organic, right? You're not going to be misled because the back label directly addresses the ambiguous statement to some extent. The problem here is that you have a more precise statement on the front and a less precise statement in the back, right? The defendant is trying to get the benefit of a scientific problem that kills 99.99% of germs, and with no accountability, and then say many common germs, which a recent consumer is going to read that and say, which many? I don't know. And then there's the third problem. Go ahead. I was going to ask you, because you didn't really brief it, your expert report from, I think it was Professor Calder, who addressed the various interpretations of the front and back labels, and I just wasn't, I mean, part of me is wondering why that wasn't addressed more in your briefing, but the way I understand it, he was saying, you know, there were two asterisks on the front, and a consumer could be thinking that the 99.9% kills 99% of germs was the asterisk to the first asterisk, which was about fast and effective, and that they might never turn around because there were two asterisks on the front. And then they were saying even if they did turn it around and look at the back label because of the asterisk, they could interpret that statement on the back as saying that it was a clarification of the two front asterisks as saying we kill 99.9% of germs, and then we kill a subset of those germs in less than 15 seconds, right? And that it would all still support what you think the consumers are plausibly deceived into thinking, which is that it does kill 99.99% of germs on our hands, and then some subset even quicker, less than 15 seconds. I don't hear any argument that we can't consider that expert report on the pleading stage as creating enough of a plausible allegation that you get past a 12B6 motion to dismiss. I certainly think that adds to the plausibility of the allegations, right? We have someone who spent his whole life in marketing and helping companies with marketing saying, look, this is what's going to happen when a consumer looks at it. On top of that, you have the survey saying, hey, they looked at both sides, and that's what they think. They could have easily said no, right? Some people did, but the majority of people were thinking that it was the other way. But that also sags way into the third issue with the back label, because the back label is also not talking about the same exact thing as the front label. The front label talks about 99.99%. The back label says more than 99.99%. So imagine you're walking to a store, and it says 90% off for the clothes. And then you get inside, and one of the racks says 100% off, right? More than 99.99%. But it's only that one rack. The person walking through the store is not concerned about the ones on extra sale. They want to know about the 90% off the entire store. And when they go and pay for the product, for the shirts and sweaters, whatever that they picked, they would be saying, hey, I'm supposed to get my 90% off. That's why I walked in. And that's the problem with the bait and switch and switching what you're actually referring to on the front label versus the back label. Except that the difference here is presumably, if we're looking at the front and the back, everything's there before you, quote, walk into the store and make the purchase. And that's what makes this a little bit different than your hypothetical. The only problem, Your Honor, the inquiry isn't that we read both statements as if they were made on the front label. The inquiry is we read the first statement, and then the back to see whether it clarifies the front. I understand, but why don't we give you some time for rebuttal? We've taken you a while, unless there's more questions at this point. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Anthony Hopp on behalf of CVS and Vijon LLC. I want to address this survey because I know it's something that the Court finds important. Before I do that, there are two preliminary points I want to address. First, in Whiteside, this Court held that a reasonable consumer cannot simply look at a statement on a front label of a product, ignore the asterisk, and claim to have been misled. In this case, the plaintiff admitted in his first amended complaint that he ignored the asterisk and he never read the back label. And we've raised that in our briefs. That's been raised multiple times. That's the operative complaint right now? That is the operative complaint right now. The second amended complaint never says that the plaintiff read the back label. All it says is it talks about the back label. But there's a second amendment complaint. You said the first amendment complaint. Right. He admitted it. He admitted that in the first amended complaint. Then he amended it. Right. And in the second amended complaint, he never specifically pleads that he read the back label. Why don't we need to just send it back? I mean, that was made without the benefit of Whiteside. If your theory is right on that, then why wouldn't we remand it to give him a chance to replead? Well, he's already been deposed, Your Honor. This has been up on appeal. This is his second time. The plaintiff admitted under oath that he never read the back label, and that is in the record. So there's no point in repleting something he's already admitted in his pleadings and under oath. The second issue I want to raise before we get to the survey is that Robles and Moreno, two panels of this circuit. Here's my problem. I appreciate you bringing them to our attention, but we're not bound by either one of those. Understood. Well, I don't know that you understand that because your briefing says that the district court erred because it didn't apply Robles. That's just a nonsensical argument. Like, it's persuasive authority, but it might as well have come from the District of Guam. I mean, it doesn't mean anything. So, I mean, I'm a little frustrated with how much you hung your hat on Robles, now Moreno. I'm not saying they're not relevant, but the way you advocated for it in your brief was it didn't do you – it didn't make your point because we can't – we're not bound by Robles. Fair enough, Your Honor. I'll move on to the survey. Well, I do want to hear about Robles and Moreno. Well, sure. I just don't want you to – Fair enough. I just don't want you to say that we're bound by them. Fair enough. Robles and Moreno, two different panels of this court, non-binding opinions, with that understanding, have held as a matter of law that this precise language with these precise claims was not misleading. One of those was post-Whiteside. Yes, one of those was post-Whiteside. Moreno was post-Whiteside. Robles was pre-Whiteside, and to be candid, the allegations in Robles, the underlying allegations were slightly different. Moreno and this complaint, the complaint at issue, the Fourth Amendment complaint in Moreno, and the complaint in this case are virtually identical. I think they were patterned on each other, and therefore, it hopefully persuasive authority. A panel of this court held that the asterisk – that the plaintiff must have observed the asterisk, turned the product over, and looked at the rear label, and that the rear label narrows the claim on the front. The asterisk modifies 99.99% of germs. Asterisk. Turn it over. It says effective at eliminating many common harmful germs. 99.99% of many common harmful germs. So the many modifies germs. It's many germs. I agree with you. Can you tell me – sorry. Can you tell me what representation is actually being made? Sure. Because I don't think there's any representation being made here. Well, and this was – the court did consider this in Robles that what's being – and the district court said this. The representation is the product is effective at eliminating more than 99.99% of many common harmful germs. There's a subset of many common harmful germs you would have on your hands. The product is 99.9% effective in killing those germs. For example, the product is essentially rubbing alcohol, right? It's ethyl alcohol with a surfactant. It's the same thing that doctor puts on your arm when he gives you a shot. It kills many common harmful germs on your skin. Does it kill every germ? No. We don't claim that it does. Plaintiff has a list of about a dozen germs in his complaint and basically says it doesn't kill these germs. Well, both those things can be true. It can kill many common harmful germs on your skin and at the same time not kill a list of about 12 germs. I think if the back statement said it kills 99.9% of most common germs or most common germs in the hand, I think that would be clearly – at least it might be okay. You're clarifying the front statement in a view you can understand. The problem here, I think it's a little bit in the gray area. I don't think the back statement directly contradicts the front statement, but almost kind of renders it – I don't want to say meaningless, but kind of takes – you make kind of a bold statement in the back and the front, and in the back, you kind of walk it back. It's like CVF giveth and CVF taketh. I'm not sure what that means, and that's a little bit problematic, or at least it's in the gray area because basically make this bold claim and on the one hand say many, and no one knows what's many. If it turns out it's only about 5%, I think that would be potentially deceptive. But if it turns out it's most, then probably not. You just don't define many, so what do we do with that? Well, I think you have to look at it in the context of the pleadings in this case. What plaintiff has said is that he expected the product to kill all common germs on his hands. It's throughout the complaint, the second amended complaint. It says multiple, multiple times that what they expected because of the 99.9% that it would kill all or virtually all of any germ that he might ever have on his hands, and that's not what the product label says. It says many. It's less than all. So no matter what many means, right, and we believe it means more than some, a lot. Many means many. But the consumer has no idea. The consumer, at least in this case, sorry to interrupt, Your Honor. The consumer in this case at least should know, based on what they've said, if they believe as the complaint lays out that it's going to kill every common germ they're going to have on their hand, every potential possible common germ they would have on their hand when they flip it over and they see many. That might be. So that's one way you're saying to get out of this case is to say the plaintiff had an unreasonable expectation that would not be consistent with a reasonable consumer. And that's what the court held. But still, CVS isn't making a representation. I mean, you can't tell me even here what does it actually kill. Again, I think it kills what it says. Many of the common germs that you would have on your hands. Well, that's assuming we get to the back label. That's correct. Right. So the front label says kills 99.99% of germs.  And with another asterisk saying fast and effective. And we have an expert report saying this is designed to lead consumers to believe it kills pretty much all germs. And they could interpret one asterisk as modifying the other and just never turn it around. And that is probably, I mean, all we're asking for is a plausible allegation at the 12B6 stage. We're not actually determining the merits. And you could go and you could have a counter expert. You could attack their expert. You could say, you know, reasonable consumers would understand those asterisks to be referring to something on the back. And the standard is pretty high. They have to see those asterisks and feel that they must, they reasonably need to, they're required to look for more information and understand what CVS is saying. But you make a pretty bold statement on the front. Fast and effective kills 99.99% of germs. So you have to get to the back label even to get to what you're saying was a qualification of that statement, which is a pretty significant qualification of that statement. And then we also have an expert report saying they would not necessarily read it the way you're arguing it should be read. There is more than one plausible interpretation of your pretty vague and ambiguous statement, given what you said on the front label. So why at this stage of 12B6, when my understanding of California law is that this is generally a fact issue, and it's only when it's very clearly not misleading do we rule as a matter of law. Why isn't there enough here with the allegations and the expert report and these other things to get past the plausibility standard? Well, first, to your first point, you know, the experts saying they may not even turn it over. Whiteside says they have to turn it over. What if we don't? I mean, Whiteside, you're saying Whiteside's a categorical rule, that any time there's an asterisk, we have to, that necessarily creates the ambiguity. I mean, I'm not sure Whiteside goes that far. In Whiteside, we had an asterisk next to plant-based, and then on the front label itself, something that said, you know, by weight, 70% in the courts. And in that circumstance, they would turn the back, and then the back actually clarified what that meant. And this seems pretty different to me from Whiteside, and I would hesitate to read Whiteside as saying any time there's an asterisk, no matter the context, it categorically means there's enough ambiguity here. Your Honor, I understand you may not read Whiteside that way, but I believe that that's exactly what Whiteside says, that Whiteside says a reasonable consumer who observes an asterisk will know that there's more information. In Whiteside, it was on the front of the package. In this case, it's on the back of the package. In Moreno, the court applied Whiteside and said we must turn it over to look at the back of the package. And what the back of the package does is that it limits, it qualifies the front label statement. It says many, not all. If you're under the impression that it kills all germs, once you follow Whiteside, flip it over, you look, it says many, and if you want a product that kills all germs, you put it back on the shelf. What if I disagree with your reading of Whiteside? There's not much I can do with that, Your Honor. I think we do disagree. I think Whiteside is very clear. So if it's not categorical, though, what is your best argument for the asterisk in this context, and really two of them, creating enough ambiguity? I mean, given that we have an expert report, at least in this case, and I don't know about the other unpublished cases that you're citing because they don't mention any expert report, they don't mention two asterisks, et cetera, which is why I think they're not as persuasive as you suggest, because at least in this case we have two asterisks plus an expert saying a reasonable consumer wouldn't interpret that asterisk as requiring them to look further. Again, Your Honor, to the extent, and I know we disagree, but to the extent that that expert's opinion conflicts with California law, I think the court can disregard the notion that they wouldn't turn it over. Right. And the question then, is the back label ambiguous? One could argue that it is or it isn't. But what it doesn't do is promise what the plaintiff claims it does. The plaintiff in this case claims that it promises it will kill nearly every single germ that you would ever possibly have on your hands. It doesn't say that. It clearly doesn't say that. Whether or not you interpret many to be this or that, it's less than all. What about the expert says, well, because it says kills more than 99.99% of many common germs in less than 15 seconds, there's more than one way they could be saying that it kills the many common germs in less than 50 seconds and the rest of them in more time. I would say that. I mean, the problem here is that there's more than one plausible interpretation. So why don't they get to a jury under those circumstances? The district court held, and Moreno and Robles have held, that it's not ambiguous. But none of those decisions are binding on us. So do you have an independent argument? Can you tell me, in light of the expert and the specific facts of this case, I mean, if there is ambiguity and there is a plausible interpretation that would be deceiving and confusing to a consumer, why don't they get past pleadings? I think the expert can try to force ambiguity into this. I think the plaintiff counsel can. But what you end up with is, under the facts of this case, is that label ambiguous and does it contradict? Does it support plaintiff's argument? Does it say what the plaintiff's claim? It may say something else. You could come up with a hypothetical, as the expert did, about other things and other things that other people might think. But in this case, it doesn't. Coming back to Whiteside, because this is making me think, I mean, I thought what Whiteside said was, if you have an asterisk, you have to go to the back unless the front statement is unambiguously deceptive. So I always read Whiteside to sort of flip the presumption to say you've got to go to the back unless it's unambiguously deceptive. And I would say that even plaintiffs aren't arguing that the front is unambiguously deceptive. They seem to be arguing that the front is ambiguous and the back doesn't help cure it. Well, they have argued that it's unambiguously deceptive. And as I've said, and I know they're not binding, but Robles and Moreno have both said that this specific language – well, actually, Robles said this specific language is ambiguous, said that. On the front. On the front, yes, on the front. Moreno said you don't even have to decide if it's ambiguous because of the asterisk. You go to the rear label and see what that says. And that's what Whiteside says, at least in my view. Well, I guess that's where I'm going. I mean, they may be arguing that it's unambiguously deceptive, but I'm not – I mean, it seems like ambiguity cuts against the plaintiff on the question of whether to go to the back label. It does. I'm not entirely sure what ambiguity does. That's what I'm struggling with, is what do we do if we go to the back? Because I can't tell that you're making a representation. You're saying something. I just have no clue what you're saying. As I've said. And you're saying if you don't understand that, then don't buy the product. That's one thing. Absolutely, Your Honor. But the other thing, again, we're saying, and to be clear, I've said this several times, is what that label doesn't promise is what the plaintiff claims it does. But California law says you can't really just make an ambiguous statement and say because we weren't clear, we win. The problem I have is in the cases you're relying on, the back label statement actually was quite clear. In the baby wipes case, you go to the back label, it says very clearly natural and synthetic ingredients. So there's just really at that point no doubt that the diaper contains or uses synthetic ingredients. Here, I mean, even assuming that you're right, that the asterisk means consumer has to look to the back. They look to the back. I don't think that dispels necessarily what you said on the front, which was kills 99.9% of germs. It just creates, arguably, or they plausibly allege, more confusion. So to me, it's not like it said it created clarity. The back label didn't create clarity that negates the claim. If you're saying that, I mean, I think that's where I have trouble with, and you're saying do you win only if the back label is clear? What happens if it's confusing? I win if my client wins if the back label is clear enough, if it's clear enough to dispel what plaintiffs said is the confusion caused by the front label, and it does. I mean, it clearly does. It says less than all. Now, I know I'm over time. I'm happy to address the survey issue if the court is willing. If not, I can submit. I don't think we can. Yeah, I think we can. Thank you, Your Honor. Thank you. Your Honor, just a second ago, Mr. Hopp said that the Robles panel said that the front statement in Robles was ambiguous. That same panel in Sutter had the statement, kills 99.99% of germs, no asterisk, and they said it was unambiguous and it was deceptive. Which one said unambiguous and it was deceptive? Sutter, S-O-U-T-E-R, versus Edgewell. S-O-T-T-E-R? S-O-U-T-E-R, versus Edgewell. And that's the same panel as Robles. So the idea that Robles is saying that the front label has to be ambiguous. And that was an unpublished opinion? They're all unpublished opinions, Your Honor. We've made a mess of this. Yeah, I understand. A couple other things. Judge Lee and Judge Nelson, I think you both hit it right in the head. The back label needs to clarify the front label. Well, maybe, maybe not. I mean, maybe they're just not saying anything. Well, even if they're not saying anything, how can you say then that it's making it impossible for someone to be deceived? Because the statement when you're looking at the back label is that someone would have to. I think it's the reasonable consumer, whether the reasonable consumer can be deceived. Suppose the facts show that, and you guys agree, that this product kills 80% or 99% of the 80 most common germs. Would the statement still be false? It still uses the word many common germs. And we know now for a fact this alcohol kills 80%. Would that be misleading? 80% of. . . The many means really 80%. The facts show. . . The label still uses the word many in the back. But the science shows it's 80%. So in the back it's saying 80%? No, no. It still says many, but we're saying the facts are it's 80% of the common germs are killed. Would that still be deceptive? Yeah, it would, Your Honor. So turning out the back label in this country got a little annoying because it's math. But the back label says it kills more than 99.99% of germs, many common germs. 99% of something, right? And in this case, it would be. . . The way the percentage works, you have to multiply it by the thing that we're talking about, the denominator. So in this case, it would be 99.7% multiplied by X because X is not defined. And depending on how you define X, it could be misleading or it could be obviously. . . Yeah, but if it's 80%, then I think we could say probably, I think as a matter of law, the reasonable consumer would interpret many to mean 80%, right? How many grains of sand are in the desert? What is many, right? That's the question. 80%, though, and that's, I guess, maybe the one thing maybe you didn't do enough is in the complaint. If you allege the complaint, in reality, alcohol only kills 30% of common germs. In that case, maybe, yes, it is deceptive because maybe a reasonable consumer would construe many to mean at least most, maybe even 50%. I don't know. But I guess that's the one part that's missing in the complaint of what is the allegation about the efficacy of this product? Because it actually may be true. If it kills 85%, I think many is fine. We just don't know that here based on the complaint. I have three problems with that. The first one, many could mean all. For example, suppose you have four vehicles, okay? And I say, Judge Lee has many vehicles, one black, one blue, one yellow, one pink. I just mentioned all of them, and it's consistent with many. Second problem that I have, for us to draw a specific percentage that is no longer misleading, regardless, without any plausible allegations, saying that everyone is going to think about 80% rather than the germs they're likely to encounter, 99.99% of them, would it be to ignore the percentage that they're actually telling us, which is 99.99%? No, it's actually not ignoring the percentage. The percentage probably is true. There's some subcategory of all germs that it kills 99.9%. I mean, at the end of the day, this is used by doctors, right? I mean, before you get a shot, I mean, there's some efficacy to this. It just doesn't kill everything. I don't agree with you, Your Honor. This kills some germs. I agree with you. But your client is saying it kills all germs, and that's the only way. My client is saying it will kill 99.99% of the germs that they will encounter. Of germs includes the germs they're likely to encounter. We're not talking about a germ that they haven't discovered. Look, they could have easily written the label to say it kills many germs on the front label. But you would argue that's still deceptive. Kills many germs? Yeah. No, potentially that wouldn't be deceptive, Your Honor. It would be ambiguous. I thought you said 99% of many germs. No, no, no, no. Just kills many germs. That would. Because now you're adding the percentage, and then you're opening up as to what, right, is the question. So you're right that it kills some germs. And I didn't pick the percentage. They did. That's why I'm saying 99.99%. That's the scientific precise percentage that they picked, not me. So the third problem, just going back to Judge Nelson's question, is that you're saying for us to plead the opposite. We're saying that the statement is misleading. And I have to disprove or say whatever the number of germs that this product actually does, instead of just saying it's misleading. It doesn't do what you promised. That would require the pleading stage for me to potentially investigate and discover how effective this product is, other than what they're promising. Meaning, is it 80? Is it 70? Is it 50? Maybe tests and things of that nature that I would require at the pleading stage shouldn't be required. What I should be looking at is discovery and see what is the underlying data that they have to support the statement. And to the extent that that doesn't support the statement, therefore it's misleading. So that's the problem that I would have with saying 80% saves them or 50% saves them. It flips the burden into the plaintiff to investigate the claims, and maybe they won't even have access to some of these documents. If it's a different product, maybe the plaintiff can go in a lab and just go and test every single one of them and find out. But bringing back to the facts of this case. Counsel, we've let you go over pretty well. Are there more questions? I appreciate it. It's a very interesting case, but I think we've got to close it off. Thank you, Your Honor. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted, and that concludes our arguments for the day. Thank you. All rise.
judges: NELSON, LEE, SUNG